UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) Bankruptcy No. 09 B 38240 |
| | ) Chapter 7 |
| KELLI COOPER a/k/a | ) Judge John H. Squires |
| KELLI GORDON, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| LORALEE BADAMI and LORALEE | ) Adversary No. 10 A 00125 |
| BADAMI as special administrator of the | ) |
| Estate of JOHN BADAMI, deceased, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| KELLI COOPER a/k/a | ) |
| KELLI GORDON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on the amended complaint filed by Loralee Badami, individually, and as special administrator of the estate of John Badami, deceased, (the "Creditor") to determine the dischargeability of a debt against Kelli Cooper a/k/a Kelli Gordon (the "Debtor") pursuant to 11 U.S.C. § 523(a)(2)(A). For the reasons set forth herein, the Court finds that the Creditor has failed to establish all of the requisite elements in order for the debt to be found non-dischargeable. Judgment is entered in favor of the Debtor.

-2-

# I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

# II. FACTS AND BACKGROUND

The dispute revolves around the Creditor and her late-husband's purchase of a home from the Debtor and the persistence of pre-existing problems with water leakage, plumbing, electrical, and asbestos contamination.

On May 8, 2006, the Debtor executed a residential real property disclosure report which represented that she was unaware of any significant problems with her home located at 540 Orchard Court, DesPlaines, Illinois (the "Property"). (Debtor Ex. No. 1.) Thereafter, on May 26, 2006, the Creditor entered into a contract with the Debtor to purchase the Property. (Creditor Post-trial Closing Submission Exhibit A.) An inspection was performed on the fifty-year old house on June 9, 2006, by a service hired by the Creditor. (Debtor Ex. No. 2.) The report noted numerous deficiencies and problems, including: abnormal foundation cracks and low spots in the grade adjacent to the foundation walls; needed repairs to exterior trim, woodwork, and siding; cracked and uneven cement; roof leaks and related problems; suspected damaged asbestos insulation; and electrical and plumbing issues. (*Id.*) The report contained a recommendation for full review of the electrical and plumbing systems by qualified contractors. (*Id.*) The Creditor testified that this report ultimately led to the cancellation of the contract.

-3-

The Debtor testified that after the contract was cancelled, she made repairs to the Property. On July 13, 2006, she sent an e-mail to one of the realtors for the parties stating that the electrical problems were repaired, the asbestos was removed, and a plumber was scheduled to repair the pipes and assess the overall plumbing. (Creditor Post-trial Closing Submission, Ex. D.) Repair bills for electrical (Debtor Ex. No. 4), plumbing (Debtor Ex. No. 5), and an asbestos sampling analysis (Debtor Ex. No. 6) showed that work was performed on the Property in June of 2006. On July 14, 2006, a report was sent to the Debtor by an air quality sampling firm that tested air samples taken from the Property. (Debtor Ex. No. 9.) The report concluded that the Property "was not contaminated with airborne asbestos fibers at the time of sampling under normal living conditions." (*Id.*)

The parties entered into a new sales contract dated July 17, 2006. (Creditor Post-trial Closing Submission Ex. E.) The sale closed on August 21, 2006, after a walk-through viewing of the Property on the prior day. The Creditor heard the Debtor answer specifically that there were no remaining water issues and that the remedial work had eliminated the asbestos. The Debtor stated that she hired plumbing and electrical repairmen to correct those issues. The Creditor testified that she entered into the second contract based on the air quality report and these representations made by the Debtor. According to the Creditor, she would not have entered into that contract if she had been aware of the flooding, leakage, plumbing, and electrical issues. The Creditor stated that she saw the invoices for the plumbing and electrical repairs made prior to the closing. After the second contract was signed, the Creditor admitted that she did not have another inspection of the Property because she relied on the Debtor's statement that all of the problems had been remediated.

-4-

According to the Debtor, she never had leaks in the roof or in the basement. It rained after the Creditor moved into the Property, and she noticed water leaking into the unfinished parts of the basement between the foundation and the wall and two places on the ceiling. She testified that each time it rained, leaking occurred in the basement.

The Creditor repaired the leaks. She had the floors and walls opened up and discovered there were rust spots in the studs underneath the drywall and the drywall was still wet when that work was performed. Baseboard was removed which revealed further water damage. The basement floor and ceiling were replaced. Additionally, the Creditor installed a sump pump and had drain tiles installed around the perimeter of the Property in order to avoid exterior rain water from coming into the basement. The leaking rain also caused a ceiling crack in the kitchen and living room. When the Creditor first saw the crack, she noticed that it had been painted over. She also found water leaking around a window. The Creditor replaced the Property's roof walls, gutters, and soffits.

Furthermore, electrical problems persisted. The inspector returned and noticed that there were unresolved issues, including hanging wires not enclosed in conduit and missing circuit breakers. The Creditor paid for the repair of these problems. The Creditor also experienced plumbing problems, including a drip in the shower which led to dripping from the tub down to the unfinished part of the ceiling in the basement. The Creditor discovered that there was old rotten piping causing that leak which was not apparent to the naked eye. The Creditor spent thousands of dollars to remedy all of the problems with the Property.

-5-

## III. APPLICABLE STANDARDS

A.  **Exceptions to the Discharge of a Debt**

The discharge provided by the Bankruptcy Code is meant to effectuate the "fresh start" goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 957 (Bankr. N.D. Ill. 1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *see also In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). Exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor. *In re Morris*, 223 F.3d 548, 552 (7th Cir. 2000); *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972-73 (7th Cir. 1998). "[Section 523(a)] is narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

B.  **11 U.S.C. § 523(a)(2)(A)**

Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the dischargeability of debts. Section 523(a)(2)(A) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt–
>
> . . .

-6-

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) lists three separate grounds for dischargeability: false pretenses, a false representation, and actual fraud. *Id.*; *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001).

### 1. False Pretenses or False Representation

In order to except a debt from discharge under the false pretenses or false representation prongs of § 523(a)(2)(A), the creditor must establish the following elements: (1) the debtor made a false representation of fact; (2) which the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) the creditor justifiably relied on the false representation. *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 643 (Bankr. N.D. Ill. 2004); *Bednarsz v. Brzakala (In re Brzakala)*, 305 B.R. 705, 710 (Bankr. N.D. Ill. 2004). To prevail on a § 523(a)(2)(A) complaint, all three elements must be established. *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001). Failure to establish any one fact is outcome determinative. *Jairath*, 259 B.R. at 314.

False pretenses in the context of § 523(a)(2)(A) include implied misrepresentations or conduct intended to create or foster a false impression. *Mem'l Hosp. v. Sarama (In re*

-7-

*Sarama)*, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996). The Court has defined false pretenses as follows:

> [A] series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor....
>
> A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor. A "false pretense" is established or fostered willfully, knowingly and by design; it is not the result of inadvertence.

*Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996) (internal quotation omitted).

False pretenses do not necessarily require overt misrepresentations. *Sarama*, 192 B.R. at 928. "Instead, omissions or a failure to disclose on the part of a debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.* Silence or concealment may constitute false pretenses. *Shelby Shore Drugs, Inc. v. Sielschott (In re Sielschott)*, 332 B.R. 570, 573 (Bankr. C.D. Ill. 2005); *Fosco v. Fosco (In re Fosco)*, 289 B.R. 78, 86 (Bankr. N.D. Ill. 2002).

A false representation can be shown through conduct and does not require a spoken or written statement. *Jairath*, 259 B.R. at 314. In other words, "[a] debtor's silence regarding a material fact can constitute a false representation under § 523(a)(2)(A)." *Health Benefit Plan v. Westfall (In re Westfall)*, 379 B.R. 798, 803 (Bankr. C.D. Ill. 2007). A

-8-

debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression. *Trizna & Lepri v. Malcolm (In re Malcolm)*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992).

### 2. Actual Fraud

The Seventh Circuit Court of Appeals has defined the term "fraud" for purposes of § 523(a)(2)(A) as follows:

> 'Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.'

*McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (*quoting Stapleton v. Holt*, 250 P.2d 451, 453-54 (Okla. 1952)). "Actual fraud" is not limited to misrepresentation, but may encompass "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another[.]" *Id.* (internal quotation omitted). Hence, a different analysis from misrepresentation must be utilized when a creditor alleges actual fraud. *Id.* The *McClellan* court opined that because common law fraud does not always take the form of a misrepresentation, a creditor need not allege misrepresentation and reliance thereon to state a cause of action for actual fraud under § 523(a)(2)(A). *Id.* Rather, the creditor must establish the following: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute.

-9-

*Id.* at 894. The fraud exception under § 523(a)(2)(A) does not reach constructive frauds, only actual ones. *Id.* The existence of fraud may be inferred if the totality of the circumstances presents a picture of deceptive conduct by the debtor that indicates he intended to deceive or cheat the creditor. *Cripe v. Mathis (In re Mathis)*, 360 B.R. 662, 666 (Bankr. C.D. Ill. 2006); *Sielschott*, 332 B.R. at 572.

### 3. Intent

Any cause of action under § 523(a)(2)(A)–false pretenses, false representation, or actual fraud– requires proof that the debtor acted with intent to deceive. *Pearson v. Howard (In re Howard)*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006). Proof of intent to deceive is measured by the debtor's subjective intention at the time the representation was made. *Mega Marts, Inc. v. Trevisan (In re Trevisan)*, 300 B.R. 708, 717 (Bankr. E.D. Wis. 2003); *see also CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004). "Where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *Jairath*, 259 B.R. at 315. Because direct proof of fraudulent intent is often unavailable, fraudulent intent may be inferred from the surrounding circumstances. *Hickory Point Bank & Trust, FSB v. Kucera (In re Kucera)*, 373 B.R. 878, 884 (Bankr. C.D. Ill. 2007); *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996). After all of the evidence has been produced, the court must then determine whether the circumstances, viewed in the aggregate, present "a picture of deceptive conduct" by the debtor, indicating an intent to defraud the creditor. *See Mathis*, 360 B.R. at 666; *Sielschott*, 332 B.R. at 572.

-10-

The determination of intent is a question of fact to be decided by the bankruptcy court. *Howard*, 339 B.R. at 919.

### 4. Justifiable Reliance

The final element under § 523(a)(2)(A) requires a finding of causation. Reliance on a false pretense, a false representation, or actual fraud under § 523(a)(2)(A) must be "justifiable." *Field v. Mans*, 516 U.S. 59, 74-75 (1995). Justifiable reliance is a less demanding standard than reasonable reliance and requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* at 71 (internal quotation omitted). Justifiable reliance is an intermediate level of reliance that falls somewhere between the more stringent "reasonable reliance" guidepost and the more lenient "reliance in fact." *Id.* at 74-75.

The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent. *Id.* at 70-72. Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard. *Id.* at 71; *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). "[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (*quoting Field*, 516 U.S. at 70). "However, a 'plaintiff may not bury his head in the sand and willfully ignore obvious falsehoods.'" *Johnston v. Campbell (In re Campbell)*, 372 B.R. 886, 892 (Bankr. C.D. Ill. 2007) (*quoting*

-11-

*Zirkel v. Tomlinson (In re Tomlinson)*, Ch. 7 Case No. 96 B 27172, Adv. No. 96 A 1539, 1999 WL 294879, at *12 (Bankr. N.D. Ill. May 10, 1999)).

To satisfy the reliance element of § 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge. *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 676 (7th Cir. 1995) ("Reliance means the conjunction of a material misrepresentation with causation in fact."). *See also Westfall*, 379 B.R. at 805 (*citing Mayer*).

## IV. DISCUSSION

There is no real doubt that the Property had multiple problems that ultimately required the Creditor to expend thousands of dollars to remedy. The Court concludes that the initial disclosures made by the Debtor in May of 2006 actually misrepresented the conditions of the Property. Contrary to the statements made on the disclosure form, there were multiple issues with the plumbing, electrical, and roof, as well as asbestos concerns. These problems were so grave and numerous that the Creditor cancelled the first sales contract.

The Debtor testified that she did not experience any problems with leakage and related damage suffered by the Creditor. The Creditor argues that the Debtor fraudulently concealed these issues and claimed the problems were solved. While that is possible, it is also possible that the Debtor herself was misled by the contractors who made the repairs for her that they had corrected all of the problems disclosed by the inspection report. This latter scenario cannot be rejected out of hand because there was no testimony elicited from the

-12-

contractors who either performed the repairs or made estimates for the remedial work they proposed. Neither the Debtor nor the Creditor were shown to have any particular knowledge or experience with any of the issues noted on the inspection report. Some of the defects in the Property were latent such as parts of the plumbing that had to be replaced, the leakage behind the drywall, and the rust in the studs. Therefore, it is plausible that the Debtor was unaware of such problems.

The Court finds that the preponderance of the evidence failed to establish that the Debtor intended to deceive the Creditor. There was no corroborative evidence adduced to show that the Debtor had actual knowledge of the remaining unresolved issues after the repairs were made to the Property. Moreover, the circumstances, viewed in the aggregate, do not present a picture of deceptive conduct by the Debtor, indicating an intent to defraud the Creditor. The Debtor, after the cancellation of the first contract, hired contractors to make repairs to the Property at her own expense. In hindsight, those repairs failed to correct all of the defects.

The other requisite element lacking in the proof is justifiable reliance. There is no question that the Creditor relied on the Debtor's oral and written representations that the problems had been resolved. However, the Court finds this reliance was not justifiable in light of the numerous defects pointed out in the inspection report. The report recommended that qualified contractors be consulted for full review of the roofing, electrical, plumbing, and asbestos problems. The inspection report was a huge red flag to the Creditor that there were serious defects with the Property. In light of the seriousness of the defects, mere reliance on the paid repair bills furnished by the Debtor and her representations that the

-13-

problems had been remedied strikes the Court as too little. *See Barr*, 194 B.R. at 1022 (stating that "those not knowledgeable in home construction are like blind persons trying to make their own inspections unless they employ their own knowledgeable inspector, engineer, or architect"). While hindsight is always 20/20, another inspection of the Property likely would have disclosed the fact that the repairs were incomplete. Under the circumstances, the Court finds that the Creditor's reliance was not justified.

### V. CONCLUSION

For the foregoing reasons, the Court finds that the Creditor has not demonstrated all of the elements under § 523(a)(2)(A). Judgment is entered in favor of the Debtor.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rules of Bankruptcy Procedure 5003 and 9021.

**ENTERED:**

DATE: 2/23/11

/s/ John H. Squires
**John H. Squires**
**United States Bankruptcy Judge**

cc:   See attached Service List

# SERVICE LIST

### Loralee Badami, et al. v. Kelli Cooper
**Adversary Case No. 10 A 00125**

Charles P. Romaker, Esq.
Amy C. Wright, Esq.
The Romaker Law Firm
134 N. LaSalle Street, Suite 840
Chicago, IL 60602

John P. Carlin, Esq.
Chang & Carlin
1305 Remington Road, Suite C
Schaumburg, IL 60173

Gina B. Krol, Esq.
Cohen & Krol
105 W. Madison Street, Suite 1100
Chicago, IL 60602

Patrick S. Laying, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604